## J. WATSON *v.* THE STATE.

1. ABORTION. — In a prosecution for administering a drug or medicine to a pregnant woman for the purpose of producing an abortion, it is not necessary to allege what drug or medicine was administered. Averment that it was a drug or medicine calculated to produce abortion is sufficient.

2. ACCOMPLICE TESTIMONY. — In a trial for attempting to produce an abortion, the female's father was a witness for the prosecution, and testified that the defendant informed him of his daughter's pregnancy, and suggested that he (the defendant) could give her a drug that would remove it, whereupon he (the witness) replied, "All right; anything to save my child." *Held,* that this was such encouragement as made the witness an accomplice, and necessitated a proper instruction to the jury on the corroboration of his testimony required by the Code of Procedure.

3. SAME — CHARGE OF THE COURT. — The court below instructed the jury that, "in order to convict a defendant upon the testimony of an accomplice, there must be sufficient corroborating testimony of his guilt to satisfy your minds of the truth of the charge against him." *Held,* erroneous, because not tantamount to the requirement of the Code that the corroborating evidence shall tend to "connect the defendant with the offence committed."

4. Same. — A pregnant woman who willingly receives and takes medicine to produce an abortion is not an accomplice. But her moral implication is a proper consideration for the jury in weighing her testimony.

5. Evidence. — Testifying for the State, the implicated female deposed that she informed the defendant about her menstrual periods, and that he told her it would ruin him for her to have a baby. On her cross-examination, the defence asked her what was the occasion, or reason, for the colloquy between them. *Held*, that the inquiry was legitimate, and should have been allowed.

6. Same. — The same witness also testified that she sent to the defendant's wife a certain note, in her own handwriting, but that she copied it from an original written by the defendant for the purpose. (The note imputed her pregnancy to her *fiancé*, since deceased.) *Held*, that the defence was entitled to ask her how the defendant came to write the note, and to have it read in evidence to the jury, and also to use it as a standard of comparison with a letter imputed to, but disowned by her.

7. Same. — The defence should have been allowed, on cross-examination of the prosecuting witness, to ask him if he had not offered to make no complaint against the defendant if the latter would pay him a certain sum of money.

Appeal from the County Court of Falls. Tried below before the Hon. E. C. Stuart, County Judge.

The appellant was charged by information with having, on September 10, 1879, attempted to produce an abortion on one Mattie Shook, a pregnant female, by designedly administering to her, with her consent, a certain drug and medicine calculated to produce abortion. The jury found the defendant guilty, and assessed his punishment at a fine of $250.

Mattie Shook, for the State, testified that she had lived with the defendant's family from December, 1878, until September, 1879. At the latter date she was pregnant, and had been since the preceding March. About April, 1879, she told the defendant of her condition, and he, being a doctor, told her he could make her miscarry. Two or three months afterwards he gave her a bottle containing an ounce of ergot, and told her to take two teaspoonfuls every two hours until she took it all. He measured out and gave her the first dose, and was present when she took the second.

The remainder she took as he directed, but oftener than he told her. Defendant told her that it would produce abortion, and that it would ruin him and her for her to have a baby. Witness neither paid nor promised him anything for his services. A bottle containing a dark liquid being shown to the witness, she looked at and smelled it, and pronounced it ergot. That which she took had no effect on her. While she lived at the defendant's he had a wife and children living with him. A note dated August 1, 1879, addressed to the defendant's wife, and signed with witness's name, being shown to her, she acknowledged that it had been written and sent by her, but said that she copied it from one which the defendant gave her for the purpose. The defence exhibited to her a letter enclosed in a broken envelope which was post-marked Winchester, Tennessee, December 16, 1879, and addressed to the defendant at Marlin, Falls County, Texas. She acknowledged that she wrote the address on the envelope, but pronounced the letter a forgery, it having her name subscribed to it. She stated that in October or November, 1879, she left Falls County and went to Winchester, Tennessee, where her baby was born on the 29th of the latter month. While at Winchester she wrote a letter to the defendant, and enclosed it in the envelope shown her. Her letter was written on different paper than the letter she pronounced a forgery.

During the cross-examination of this witness the defence reserved sundry bills of exception to the rulings of the court, which suppressed inquiries into her colloquies with the defendant, and as to how he came to write the original note to his wife for the witness to copy and send as her own, and refused to allow it to be read as evidence, or to be used as a standard of comparison in connection with expert testimony upon the genuineness of the letter which she pronounced a forgery. The note to Mrs. Watson was set out in one of the bills of exception. It apprised her of the pregnant condition of the writer, and imputed it to a man to whom she was engaged, but who had since died.

O. S. Shook, the father of Mattie, was the prosecuting witness, who made the sworn complaint on which the information was preferred. Testifying for the State, he said that the defendant, about the time alleged in the information, told him that his daughter was pregnant, and expressed great sympathy for witness and his family. Defendant said she was pregnant by the same man designated in the note sent by Mattie to Mrs. Watson. Defendant said that he could give her a powder and make it all right, and that she was not the first woman who had been caught in such a scrape, to which the witness replied, "All right; anything to save my child." Shortly afterwards the defendant told witness that it was getting along all right; that he was doing it gradually in order to save her general health, but that she was getting smaller and in a short time would be all right. The defence proposed to prove by this witness that when he first made complaint he demanded of the defendant $2,500 as a condition on which he would not press the matter. The court excluded the proof as immaterial, and the defence reserved a bill of exceptions.

Dr. Drury, for the State, testified that he was a practising physician, and being shown the same vial exhibited to Mattie Shook, pronounced its contents to be ergot, and a drug which the medical profession considered the best known for the purpose of producing abortion. He would not prescribe for a pregnant female such doses as those described by Mattie Shook, unless his purpose was to produce an abortion. This concluded the evidence in chief for the State.

W. H. Featherstone, testifying for the defence, stated that he was boarding with the defendant in December, 1879, and about the 20th of that month he took from the post-office the defendant's mail-matter, and delivered it on a table in a room where the defendant was lying sick. Among the mail-matter was a letter addressed to the defendant, and post-marked Winchester, Tennessee, December 16, 1879.

Witness noticed the letter closely, and was satisfied it had not been opened when he laid it on the table in the defendant's room. After leaving the mail-matter the witness went in to dinner, and mentioned to the defendant's wife that he had brought the mail. Being shown the envelope exhibited to Mattie Shook, the witness recognized it as the one which was on the letter in question. His attention was directed to the letter so post-marked, because he had heard of the scandal relative to the defendant and Mattie Shook, and knew that she had gone to Tennessee.

Mrs. Watson, the defendant's wife, testified that she had often seen Mattie Shook write, and knew her handwriting. The envelope post-marked Winchester, Tennessee, and the letter in question, being exhibited to the witness, she stated that both the letter and the address on the envelope were in the handwriting of Mattie Shook. Referring to the occasion spoken of by Featherstone, Mrs. Watson stated that when she took the defendant's dinner into the room where he was lying sick, she found the mail-matter on the table, and among it was this letter, with the envelope upon it and unopened. She broke the envelope and read the letter to the defendant.

The letter in question was read in evidence. It was written over the name of Mattie Shook, and purported to inform the defendant that her father had written to her for the purpose of getting her to swear that the defendant was the father of her child, and tried to make her miscarry it, but that she would not so swear, because it was not true that he was its father, or had tried to make her miscarry it. The letter explained that O. S. Shook had written to Mattie that he believed the child to be the defendant's, and that the defendant had it to pay for; and that he (Shook) could ruin the defendant if Mattie would swear as requested.

Mrs. Watson, in her further testimony, stated that while Mattie stayed at the defendant's she had no trunk or other close receptacle, and witness had free access to everything, and never saw or heard of any ergot about the premises.

The State, in rebuttal, recalled Mattie and her father. The former again pronounced the Winchester letter a forgery, and stated that she had never written anything like its contents. The latter testified that the letter was not in Mattie's handwriting, though the address on the envelope was. He had frequently seen her write, had corresponded with her, and knew her handwriting

*Goodrich & Clarkson* filed an able brief and argument for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J.    The information in this case charges " that Doctor J. Watson, late of the county of Falls, laborer, on the 10th day of September, A. D. one thousand eight hundred and seventy-nine, with force and arms, in the county of Falls, State of Texas, did then and there unlawfully and wilfully attempt to produce an abortion on one Mattie Shook, then and there a pregnant female, by then and there designedly administering to her, the said Mattie Shook, with her consent, a certain drug and medicine, then and there well calculated to produce an abortion upon her, the said Mattie Shook," etc.

This information was brought under the provisions of arts. 536 and 538 of our Penal Code, which read thus : —

" Art. 536.    If any person shall designedly administer to a pregnant woman, with her consent, any drug or medicine, or shall use toward her any violence, or any means whatever, externally or internally applied, and shall thereby procure an abortion, he shall be punished by confinement in the penitentiary not less than two nor more than five years ; if it be done without her consent, the punishment shall be doubled."

" Art. 538.    If the means used shall fail to produce an abortion, the offender is nevertheless guilty of an attempt to produce abortion, provided it be shown that such means

were calculated to produce that result, and shall be punished by fine not less than one hundred nor more than one thousand dollars.''

A motion to quash was made, the chief ground of which was that the information does not charge what drug or medicine was administered, and, therefore, no proof could be admitted. The rules laid down in the Code of Criminal Procedure with respect to allegations in indictments, and the certainty required, are applicable also to informations. Code Cr. Proc., art. 432. One of these rules is that '' everything should be stated in an indictment which it is necessary to prove, but that which it is not necessary to prove need not be stated.'' Code Cr. Proc., art. 421.

Applying this rule — for it is the one invoked — to the statute upon the subject of abortion, copied above, and it means only that it should be charged *that a drug or medicine* calculated to produce that effect shall be alleged and proven ; the name of the drug or medicine need not be stated, nor need it be described as noxious. *The State* v. *Vawter*, 7 Blackf. 592 ; *Rex* v. *Phillips*, 3 Camp. 73. Neither is it necessary to specify the kind, quality, or quantity of the medicine. *The State* v. *Van Houten*, 37 Mo. 357. The indictment sufficiently charged the offence, and the court committed no error in overruling the motion to quash.

Numerous other errors are assigned. Those with reference to the charge of the court relate to defects in the charge as given, and the refusal of requested instructions. The main defect is in that portion covering the law of accomplices. The testimony of O. S. Shook, the father of the injured female, showed that he not only was apprised by defendant of the condition of his daughter, but that, upon the suggestion of defendant that he could give her a powder and make it all right, he not only agreed to, but encouraged him in it, by saying to him, ''All right ; anything to save my child.'' This made him an accomplice under the law. Penal Code, art. 79. It was important that the jury should

have been fully and pertinently instructed in the law as it related to the testimony. The definition of the offence copied from the statute would scarcely be sufficient for the purpose. On this branch of the case another error was committed by the court in the following instruction, viz.: "In order to convict a defendant upon the testimony of an accomplice, there must be sufficient corroborating testimony of his guilt to satisfy your minds of the truth of the charge against him." The law is, that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offence committed, and the corroboration is not sufficient if it merely shows the commission of the offence." Code Cr. Proc., art. 741. As given, the charge was not an accurate enunciation of the law.

But it is claimed and insisted by defendant that, the drug having been administered with the consent of Mattie Shook, her consent made her also an accomplice, and that the court should have instructed the jury with reference to and in conformity with that view of the case. There has been some contrariety of opinion and decision in the courts upon this subject. The rule that she does not stand legally in the situation of an accomplice, but should rather be regarded as the victim than the perpetrator of the crime, is one which commends itself to our sense of justice and right, and there is certainly nothing in our law of accomplices which should be held to contravene it. The doctrine that she is not an accomplice, in the strict legal acceptation, has been held in England. *Rex* v. *Hargrave*, 5 Car. & P. 170; *Rex* v. *Boyes*, 1 Best & S. 311; 101 Eng. Com. Law, 309. This has been followed and adopted in New York. *Dunn* v. *The People*, 29 N. Y. Ct. App. 523. In *The Commonwealth* v. *Wood*, 11 Gray, 85, which was a case of abortion, the court say: "We think the court rightly instructed the jury that the woman was not, under the statute, technically an accomplice, for she could not have been in-

dicted with him for the offence.'' Nor do we believe she could be indicted for the offence under our statute; and this liability to indictment is a fair test of determining the legal relationship of the party to the case and the perpetrator. But, though not strictly an accomplice, inasmuch as she is in a moral point of view implicated in the transaction, it would be proper for the jury to consider that circumstance in its bearing upon her credibility. *The Commonwealth* v. *Wood*, 11 Gray, 85.

Nine bills of exception were reserved by the defendant to the ruling of the court in the exclusion of evidence, the first six of which, in our opinion, show error.

1. The defendant, after the witness had stated that he said it would ruin him for her to have a baby, had the right to have the witness answer if she knew why it would injure the defendant.

2. Defendant was entitled to have the witness state why she had informed him (after she stated she had done so) of the condition of her monthly sickness.

3. Defendant was entitled to have the witness state how the defendant came to write the note which she copied and sent to his wife, after she had stated that he did so.

The questions asked and the matters sought to be drawn out by them were legitimate under the rules of cross-examination of witnesses, and might, for aught that appears, have enabled defendant successfully to have contradicted her statements by other testimony establishing their falsity.

4. Defendant was entitled to have the note read in evidence, after the witness had stated that she copied it from one written by himself, in order that the jury might ascertain whether the damaging suspicion created by that fact was substantiated by the writing itself. The jury had the right, from an inspection of the contents of the note, to say how far in fact it affected the issues they were trying.

5. The note which the witness said she had copied, and which she admitted was in her handwriting, was legitimate

evidence as a standard of comparison for expert testimony with regard to a subsequent letter which defendant offered in evidence, and the genuineness of which was denied by the witness. "It is competent in every case to give evidence of handwriting by comparison made by experts or by the jury." Code Cr. Proc., art. 1754; *Phillips* v. *The State*, 6 Texas Ct. App. 364; *Hatch* v. *The State*, 6 Texas Ct. App. 384.

6. Defendant was entitled to show that the prosecuting witness, O. S. Shook, the father of the injured female, had demanded of him $2,500 as a condition upon which he would not prosecute him for this offence. It was, if true, an impeaching circumstance affecting his credibility, as well as an incident pertinent in showing the *animus* of the witness towards defendant.

Because of the errors indicated and discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*